UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **RODERICK BUFORD,** } | |
| } | |
| Petitioner, } | |
| } | |
| v. } | Case No.: 5:16-cv-08124-RDP |
| } | 5:08-cr-00242-RDP-HNJ-7 |
| **UNITED STATES OF AMERICA,** } | |
| } | |
| Respondent. } | |

**MEMORANDUM OPINION**

This case is before the court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence. (Civil Docket, Doc. # 1).[1] The Government responded to Petitioner's Motion on October 5, 2016 (*Id.*, Doc. # 10), and Petitioner replied on October 31, 2016. (*Id.*, Doc. # 12). The Motion to Vacate is now ripe for decision. After careful review, and for the reasons explained below, the court concludes that Petitioner's Motion to Vacate is due to be denied as untimely without an evidentiary hearing.

**I. Factual and Procedural Background**

In June 2008, Petitioner was charged along with 32 co-defendants in a multi-count indictment arising from a drug trafficking conspiracy. (Criminal Docket, Doc. # 60). On September 23, 2008, Petitioner entered into a plea agreement with the Government. (*Id.*, Doc. # 333). He agreed to plead guilty to Conspiracy to Distribute Cocaine, Crack Cocaine, and Marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count Four) and Possession with

---

[1] This memorandum opinion and the accompanying order refer to Case No. 5:16-cv-08124-RDP as the "Civil Docket" and Case No. 5:08-cr-00242-RDP-HNJ-7 as the "Criminal Docket."

1

Intent to Distribute Crack Cocaine (County Thirty-One) and Possession with Intent to Distribute Cocaine (Count Thirty-Two), both in violation of 21 U.S.C. § 841(a)(1). (*Id*.).

The agreement contained the following relevant factual basis:

> Cooperating witnesses have provided information that, following his release from prison on a drug conviction in 2004, the defendant again became involved in the drug trade. On April 9, 2008, the defendant was arrested in Decatur, Alabama and found to be in possession of over 10 ounces of cocaine, over an ounce of crack cocaine, a quantity of marijuana, and a large amount of currency. After being advised of and waiving his *Miranda* rights, the defendant stated that, following his release from prison, he began obtaining pound quantities of marijuana and then multiple ounce quantities of cocaine from James Hicks. He stated that some of the cocaine he obtained from Hicks was in the form of or was cooked into crack cocaine. At trial, the government would establish that the defendant, over the course of his dealings with Hicks, obtained multiple kilograms of cocaine from him. The defendant also stated that he met a Hispanic male named Ramon and later a Hispanic male known to him as Pedro. The investigation has revealed that these individuals were Ramon Barajas and Galdino Zamora, respectively. The defendant obtained multiple kilogram quantities of cocaine from Zamora on several occasions. The defendant stated that he was told that Zamora was the source of supply for the cocaine and that it was then sold to Reco Willingham who was in turn supplying cocaine to Hicks. During his drug trafficking, the defendant continued to obtain multiple pound quantities of marijuana for resale from various sources. At trial, the government would produce testimony which would corroborate statements made by the defendant.

(*Id*. at 3-4). Petitioner stipulated that these facts were substantially correct and acknowledged that the purpose of the factual basis was to support his guilty plea. (*Id*. at 4). He further stipulated that he was "responsible for distributing, possessing with the intent to distribute, and/or conspiring to distribute or possess with the intent to distribute a quantity of controlled substance, cocaine, the weight of which is at least 15 to 50 kilograms, some of which was in the form of crack cocaine, and marijuana, the weight of which is at least between 100 and 400 kilograms." (*Id*. at 5).

The plea agreement contained a limited appeal waiver and a waiver of the right to seek post-conviction relief. With certain exceptions, Petitioner waived his right to appeal the

conviction, sentence, fines, restitution, and forfeiture imposed by the court, as well as his right to contest his conviction or sentence in any post-conviction proceeding, including a motion to vacate under Section 2255. (*Id.* at 8-9). Petitioner retained the right to challenge a sentence above the applicable statutory maximum and a sentence above the Sentencing Guidelines range as determined by the court. (*Id.*). Finally, Petitioner affirmed that he understood and knowingly entered into the waiver. (*Id.*). During Petitioner's plea hearing, the court ensured that Petitioner (1) had read each page of the agreement, (2) voluntarily signed the agreement, (3) agreed to its contents, and (4) understood its operation and effect. (*Id.*, Doc. # 1167 at 20-22).

Petitioner's sentence was subject to enhancement pursuant to U.S.S.G. § 4B1.1, the career offender provision, due to two prior controlled substance violations. (*Id.*, Doc. # 606). On January 26, 2009, the Government filed a motion which requested a downward departure in Petitioner's advisory guideline range from life to 262 months. (*Id.* Doc. # 547 at 5). Accordingly, Petitioner was sentenced to 262 months in prison on January 27, 2009, and the court entered Petitioner's judgment on February 4, 2009. (*Id.*, Doc. # 608).

Six years later on April 13, 2015, Petitioner filed a *pro se* motion to unseal the record, judgment, sentencing transcripts, and discovery material from his federal case. (*Id.*, Doc. # 1080). He alleged that he was the victim of a federal offense committed by the former head of the Decatur Police Department, Sargent Faron White,[2] and he needed the records to determine whether his rights had been violated. (*Id.* at 2). White was convicted on September 22, 2009 of Theft from Government Agency Receiving Federal Funds in violation of 18 U.S.C. § 666(a)(1). *See* Case No. 5:09-cr-023-CLS. From 2007 to 2008, White embezzled approximately $60,000 of the Decatur Police Department's seized funds that were scheduled to be condemned through the

---

[2] Petitioner alleges that White was the investigating officer for his state offenses as well as the subject federal offenses.

3

court system. (*Id.*, Doc. # 19). He then fled to Las Vegas, where he was eventually apprehended by the United States Marshal's Fugitive Task Force on January 5, 2009. (*Id.*). In light of this factual basis, the court denied Petitioner's motion because it found that his conviction was "based on crimes wholly separate from and unrelated to the Theft from Government Agency for which Mr. White was convicted." (*Id.*, Doc. # 1082 at 2).

Petitioner filed the instant Motion to Vacate on June 30, 2016.[3] (Civil Docket, Doc. # 1). In his Motion, he alleges that (1) he received ineffective assistance of counsel because his attorney failed to investigate prosecutorial misconduct and police corruption (Grounds One and Two[4]) and (2) his guilty plea was not knowingly and intelligently entered because the prosecutor committed a *Brady* violation by withholding information about Faron White's criminal activity between 2007 and 2008 (Ground Three).[5] (*Id.* at 6-7).

---

[3] In conjunction with his Motion to Vacate, Petitioner also filed a *pro se* Motion to Unseal the Record, Judgment, Sentencing Transcripts and all Discovery Material. (Criminal Docket, Doc. # 1153). Again, Petitioner asserts that he is the victim of a federal offense committed by White, and he needs the records from his criminal case to determine whether his rights have been violated. (*Id.*). Because the court finds that Petitioner's Motion to Vacate (Civil Docket, Doc. # 1; Criminal Docket, Doc. # 1166) is due to be denied, Petitioner's Motion to Unseal the Record (Criminal Docket, Doc. # 1153) is also due to be denied.

[4] A fair reading of Ground Two shows that it does not present a stand alone claim, but rather expands upon the claim raised in Ground One.

[5] In his Motion to Vacate, Petitioner references a *Johnson v. United States* claim. (Civil Docket, Doc. # 1 at 5). Although he does not devote a separate Ground to this claim, the court briefly addresses the merits of a *Johnson* claim here:

In *Johnson v. United States*, the Supreme Court held that increasing a sentence under the residual clause of the Armed Career Criminal Act (ACCA) violates due process protections. 135 S. Ct. at 2551. The ACCA allows an increased sentence to be imposed where a defendant has three prior convictions for a "violent felony," which the residual clause defines as any felony that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(1), 924(e)(2)(B). The court reasoned that the clause was unconstitutionally vague because it created "uncertainty about how to estimate the risk posed by a crime" and "about how much risk it takes for a crime to qualify as a violent felony." 135 S. Ct. at 2554.

But, In *Beckles v. United States*, 137 S. Ct. 866 (2017), the Supreme Court clarified that its ruling in *Johnson* had no impact on the advisory Sentencing Guidelines. 137 S. Ct. at 892. The plaintiff in *Beckles* was sentenced as a "'career offender' under United States Sentencing Guideline § 4B1.1(a) because his offense qualified as a 'crime of violence' under § 4B1.2(a)'s residual clause." *Id.* at 888. Significantly, *Johnson* considered a vagueness challenge to the ACCA's residual clause, *i.e.*, a "statute fixing permissible sentences." *Id.* By contrast, the advisory Guidelines "merely guide the exercise of a court's discretion in choosing an appropriate sentence within

4

In support of his Motion, Petitioner alleges that, shortly after his indictment, the U.S. Attorney questioned him about whether he knew any "corrupt police officers." (*Id.*, Doc. # 2 at 2). Despite his suspicion of White, Petitioner responded in the negative because White had threatened him in the past relating to his prior state convictions. (*Id.*). Petitioner contends that even though he answered "no," White had actually attempted to bribe him twice by offering to make his 1995 state charges "disappear" in exchange for a "substantial amount of money." (*Id.* at 3). Petitioner claims that in November 2007, White made a similar offer and told him that if he (Petitioner) gave White $20,000, White would make the warrant for his drug trafficking offenses "disappear." (*Id.* at 3). The crux of Petitioner's argument is that his prior state offenses (which were tainted by White's criminal behavior) were improperly used to establish Petitioner as a Career Offender, thus enhancing his federal sentence.[6] (*Id.* at 12-13).

Although Petitioner filed his Motion long after the one-year statute of limitations, Petitioner asserts that his Motion to Vacate is timely because his claims did not become discoverable until May 9, 2016, when his girlfriend was finally able to obtain the documents "establishing that prior police officer Sgt. Faron White…had been arrested for corruption." (*Id.*

---

the statutory range," and thus were not subject to a due process vagueness challenge. *Id.* Because *Johnson* had no impact on the Sentencing Guidelines, any claim Petitioner intended to raise based on that rationale is due to be denied.

Moreover, Petitioner's sentence was not enhanced pursuant to the residual clause defining violent felonies. Petitioner was characterized as a career offender based on two prior controlled substance violations. Consequently, Petitioner is not entitled to any relief based on *Johnson*.

[6] It is unclear from Petitioner's pleadings whether he intends to attack his prior state convictions that were used to enhance his federal sentence based on the same grounds—*i.e.*, related to White's corruption. In an abundance of caution, the court addresses that argument here and finds that this Section 2255 habeas petition is not the appropriate vehicle for such a challenge. *See Daniels v. United States*, 532 U.S. 374 (2001). With the exception of convictions obtained in violation of a defendant's right to counsel, a defendant may not collaterally attack prior state court convictions through a Section 2255 federal habeas petition. *Id.* at 370-384. The proper method to raise such a challenge would have been through a direct appeal, a postconviction proceeding under state law, or a Section 2254 habeas petition. *Id.* at 381. If at the time of sentencing, "a prior conviction has not been set aside on direct or collateral review, it is presumptively valid and may be used to enhance the federal sentence." *Id.* at 375 (citing *Custis v. United States*, 511 U.S. 485, 496-97 (1994)). Thus, the court only considers the validity of Petitioner's federal sentence in its ruling.

at 12-13; *see* 28 U.S.C. § 2255(f)(4). In the alternative, Petitioner claims that he is entitled to equitable tolling both because he is factually innocent of his federal charges and because he diligently pursued relief as soon as he obtained the information on White's conviction. (*Id*. at 28-29).

The Government argues Petitioner's claim is untimely because Petitioner admits in his pleadings that he had personal knowledge of White's corruption as early as 1995 when he was first indicted on a controlled substance violation. (*Id*. at 7-8). Furthermore, White's 2009 conviction was a matter of public record and apparently received a considerable amount of media coverage. (*Id*. at 9; *see also United States v. White*, Case No. 5:09-cr-00023-CLS-HGD). Simply put, the Government argues that, in any event, Petitioner did not act with due diligence because he did nothing to pursue his claims "from February 14, 2009, the day on which his conviction became final, and April 5, 2015, the day on which he claims to have learned that White had been caught—a period of more than six years." (*Id*. at 11). Lastly, the Government contends that Petitioner is not entitled to equitable tolling because he has only alleged legal insufficiency of his conviction as opposed to factual innocence. (*Id*. at 12-13).

## II. Analysis

A federal prisoner may file a Motion to Vacate his or her sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). It is well settled that "to obtain collateral relief[,] a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

After careful review, and for the reasons explained below, the court finds that Petitioner's claims are due to be denied as untimely without an evidentiary hearing.

### A. Petitioner's Motion to Vacate is Due to be Denied as Untimely

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one year statute of limitations for filing a § 2255 motion. 28 U.S.C. § 2255(f). The one year limitations period runs from the latest of: "(1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. §§ 2255(f)(1)-(4).

#### i. Petitioner's Motion is Untimely Under Section 2255(f)(1)

As to the first event triggering the statute of limitations, Petitioner's Motion to Vacate is late. Petitioner pleaded guilty to the offense on September 23, 2008 and was sentenced on January 27, 2009. (Criminal Docket, Docs. # 333, 608). Judgment was entered February 4, 2009. (*Id.*, Doc. # 608). Because Petitioner did not pursue a direct appeal, his conviction became final ten days after the entry of judgment when the time for filing a notice of appeal expired. Federal Rule of Appellate Procedure 4(b)(1)(A)(i).[7] Thus, Petitioner's conviction was final on February 14, 2009. Under Section 2255(f)(1), Petitioner had until February 14, 2010 to file a Motion to Vacate. He did not do so until June 23, 2016—more than six years after the deadline.

---

[7] *See* Federal Rules of Appellate Procedure 4 Advisory Committee's note to 2009 amendment (changing deadline from 10 to 14 days, effective December 1, 2009).

But, this threshold finding does not end the court's inquiry. The court must still assess if any of the other subsections of Section 2255(f) permit the otherwise belated filing of this action.

### ii. Petitioner is Not Entitled to an Extended Statute of Limitations Under Section 2255(f)(4)

In light of his failure to file his petition within one year of his conviction becoming final, Petitioner attempts to rely on Section 2255(f)(4) to justify the timing of his filing. Section 2255(f)(4) grants a petitioner a filing deadline of one year from "the date on which the claim or claims presented could have been discovered through the exercise of due diligence." A petitioner is not required to use the "maximum feasible diligence," but is required to exercise "due, or reasonable, diligence." *Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002) (internal quotations omitted). The limitations period begins to run when facts supporting a petitioner's claim "*could have been* discovered through the exercise of due diligence, not when they were *actually* discovered." *Id*. at 711. Furthermore, the running of the limitations period does not depend on a petitioner's understanding of the "legal theories available to him" or the "legal significance of the facts that he discovers." *Calhoun v. United States*, 2017 WL 2881123, at *2 n. 2 (S.D. Ala. June 8, 2017) (quoting *Perez v. United States*, 2014 WL 31326, at *11 n. 10 (S.D. Fla. January 2, 2014)). The court's timeliness analysis under Section 2255(f)(4) begins by determining whether the petitioner exercised due diligence. *Aron*, 291 F.3d at 711. If Petitioner did exercise due diligence, "the limitation period would not begin to run before the date on which he actually discovered the facts supporting the claim." *Id*.

Here, Petitioner alleges that he heard of White's arrest around April 5, 2015, but that the facts supporting his petition did not become discoverable (for the purposes of the running of the statute of limitations) until May 9, 2016, when his girlfriend obtained the records confirming the arrest. (Civil Docket, Doc. # 2 at 4, 12-13). He argues that this documentation was necessary to

prove that White's corruption between 2007 and 2008 "rendered his 'State' and 'Inadvert[ently]' his 'Federal' Conviction unconstitutionally invalid." (*Id*. at 4). According to Petitioner, his claims -- (1) that his counsel was ineffective in failing to investigate police and prosecutorial misconduct and (2) that his guilty plea was not knowingly and intelligently entered -- were not discoverable absent his possession of the records from White's criminal case. (*Id*.). For the reasons explained below, the court finds that Petitioner did not act promptly or with due diligence in pursuing his claims.

First, Petitioner's own pleadings demonstrate that he knew of facts giving rise to his claims during his criminal proceedings, but did nothing to pursue those claims until April 2015. Indeed, Petitioner has alleged that in 1995 White attempted to bribe Petitioner twice by offering to make his state charges "disappear" in exchange for a "substantial amount of money." (*Id*. at 3). White allegedly made a similar offer to Petitioner in November 2007, just months before Petitioner was federally indicted. (*Id*.). Yet, despite this direct personal knowledge, Petitioner declined to share his concerns with the prosecutor when asked if he knew anything about corrupt police officers. (*Id*. at 2). Thus, Petitioner's own assertions make clear that he had direct personal knowledge of White's corruption years before he contacted the court on April 10, 2015 or chose to file this petition on June 23, 2016.

Petitioner's claim that his counsel was ineffective in failing to investigate White's corruption is untimely because a reasonable petitioner in his position would have known at the time that his attorney was not advancing any argument related to White. Indeed, the record shows that Petitioner failed to inform his attorney of the pertinent information that could have affected the outcome of his proceedings. The record is also devoid of any evidence indicating that Petitioner ever informed his counsel of his past history with White. So, despite being on

9

notice in 2008 of his claims regarding White, Petitioner failed to advance any claim about White until years later and failed to provide his counsel with that information. Now, seven years later, Petitioner claims that his attorney should have initiated an investigation based on information that only he possessed—information that he withheld for his own purposes and to his own detriment. Petitioner cannot claim the shelter of Section 2255(f)(4) simply because he declined to act in his own best interests despite being equipped with the knowledge he claims he did not discover until May 9, 2016.

Similarly, Petitioner's personal knowledge of White's corruption renders Ground Three of his Motion untimely. In Ground Three, Petitioner claims that his plea was not knowingly and intelligently entered because the prosecutor withheld favorable information relating to White's corruption. (Doc. # 2 at 18-27). But, as previously stated, Petitioner had firsthand knowledge of White's corruption when he pleaded guilty on September 23, 2008. He also admits that he kept this knowledge to himself when the prosecutor asked him if he knew of any corrupt police officers following his 2008 arrest. (*Id*. at 2). In fact, he sat through a plea colloquy and entered a guilty plea without sharing his concerns with his attorney, the prosecutor, or the court. Because his petition reveals that he possessed personal knowledge of White's corruption during his own criminal proceedings, Petitioner's claim, which seeks to fault the Government for allowing him to plead guilty without providing him with all relevant information, is untimely because he himself possessed the information.

Even without his personal knowledge, Petitioner could have discovered, through the exercise of due diligence, facts relating to White's corruption long before May 9, 2016. White's indictment and plea agreement -- filed on January 28, 2009 and March 2, 2009, respectively -- were both matters of public record. (*United States v. White*, 5:09-00023-CLS-HGD, Docs. # 7,

19). According to the Government, White's case also generated extensive media coverage. (Civil Docket, Doc. # 10 at 9). Given these avenues of publicly available information, Petitioner could have discovered information about White's criminal proceedings prior to May 9, 2016 had he exercised due diligence.

In an effort to establish due diligence, Petitioner alleges that after he learned of White's arrest on April 5, 2015, he attempted to contact the state and federal courts several times to retrieve the information he needed to challenge his convictions. (Civil Docket, Doc. # 2 at 4). Specifically, on April 13, 2015, Petitioner filed a *pro se* motion to unseal the record, judgment, sentencing transcripts, and discovery material from his federal case. (Criminal Docket, Doc. # 1080). The court denied his motion on April 15, 2015. (*Id.*, Doc. # 1082). He remained silent for another year until May 9, 2016, when he alleges his girlfriend obtained the documents from White's criminal case. (*Id.*). Even accepting these allegations as true, the fact remains that Petitioner did nothing to pursue his claims from February 14, 2009 (the date his conviction became final) and April 5, 2015 (the date on which he claims he learned of White's arrest)—a period of over six years. Given his claimed personal knowledge of White's corruption and the publicly available information on White's arrest, Petitioner did not act promptly or with due diligence in pursuing his claims. In other words, the facts supporting his claims could have been discovered (and likely were discovered) more than a year prior to June 23, 2016, thus rendering Petitioner's Motion untimely.

With the foregoing in mind, the court cannot perceive any justification for why Petitioner waited until June 23, 2016 to file his Motion to Vacate. Accordingly, Petitioner is not entitled to an extended statute of limitations under Section 2255(f)(4), and his Motion is due to be denied as untimely.

### iii. Petitioner is Not Entitled to the Benefit of the Equitable Tolling Doctrine

Petitioner's arguments for equitable tolling are also without merit. The court recognizes that "in the proper case § 2255's period of limitations may be equitably tolled." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999). However, equitable tolling is appropriate only "when a movant untimely files because of extraordinary circumstances that are both beyond his control *and* unavoidable even with diligence." *Id.* (citations omitted) (emphasis added). Additionally, the court is mindful that equitable tolling is an "extraordinary remedy which is sparingly applied." *Williams v. United States*, 491 F.3d 1282, 1284-85 (11th Cir. 2007). Petitioner claims that the equitable tolling doctrine saves his claims because he is "factually" innocent of his federal conviction and his prior state convictions. (Civil Docket, Doc. # 2 at 28-30). The court disagrees.

First, Petitioner's "failure to demonstrate the due diligence required by § 2255(f)(4) prevents [him] from availing himself of the benefits of equitable tolling." *Badillo v. United States*, 2013 WL 2297172, at *4 (M.D. Ala. May 24, 2013) (noting that a petitioner must show extraordinary circumstances *and* due diligence to receive the benefit of equitable tolling).

Second, Petitioner has failed to demonstrate actual innocence. If established, actual innocence functions as a "gateway" overcoming the expiration of the limitations period. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). To establish actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A petitioner must show that "it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States,* 523 U.S. 614, 623 (1998). Furthermore, actual innocence means

"factual innocence, not legal insufficiency." *Id.*; *see e.g.*, *Woulard v. Sec'y, Dep't of Corr.*, 707 Fed.App'x 631, 635 (11th Cir. 2017) (finding legal innocence as opposed to factual innocence where petitioner asserted that if his attorney had filed a motion to suppress, the Government would not have been able to prove he committed the crime and therefore he would not have pled guilty).

Here, Petitioner has failed to produce any new evidence showing he is factually innocent of his federal drug convictions. *See Schlup*, 513 U.S. at 324. Indeed, Petitioner never argues that he did not commit the crimes he was charged with. Instead, he relies on the same allegations that White's corruption invalidated his state offenses, and by extension, his federal sentence as a career offender. (Civil Docket, Doc. # 2 at 12-13). This argument suggests only legal insufficiency, as opposed to factual innocence. As such, Petitioner has failed to plead extraordinary circumstances warranting application of the equitable tolling doctrine, and his petition must be dismissed as untimely.

### B. Petitioner's Motion to Vacate Also Fails on the Merits

Even if his Motion were timely (and, to be clear, it is not), Petitioner has not demonstrated that his counsel was ineffective or that his guilty plea was made unknowingly and unintelligently. To reiterate, Petitioner has alleged that (1) he received ineffective assistance of counsel because his attorney failed to investigate prosecutorial misconduct and police corruption (Grounds One and Two) and (2) his guilty plea was not knowingly and intelligently entered because the prosecutor committed a *Brady* violation by withholding information about White's criminal activity between 2007 and 2008 (Ground Three). (*Id.* at 6-7). The court reviews the merits of each claim and finds that Petitioner's Motion is due to be denied.

### i. Petitioner's Ineffective Assistance of Counsel Claim is Due to be Denied

The governing standard for ineffective assistance of counsel claims derives from *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court established a two-prong test for adjudicating ineffective assistance of counsel claims; both prongs of the test must be met for a petitioner to succeed. *Id.* at 687. First, a petitioner must show that counsel's performance was deficient, *i.e.*, the performance was outside the range of professionally competent assistance. *Id.* The proper measure of an attorney's performance is "reasonableness under prevailing professional norms." *Id.* at 688. Unless a petitioner can rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," he or she cannot show that counsel's performance was constitutionally deficient. *Id.* at 689. "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. [The court asks] only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992); *see also Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) (*en banc*) (stating that "perfection is not the standard of effective assistance").

Second, a petitioner must also establish prejudice. That is, he must show there is a reasonable probability that, absent counsel's errors, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 687; *Chandler v. United States*, 218 F.3d 1305, 1312-13 (11th Cir. 2000) (*en banc*). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because Petitioner must meet both parts of the *Strickland* test, the court need not address the performance prong if he cannot meet the prejudice prong, and vice versa. *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

Petitioner argues that his counsel was ineffective due to a failure to (1) initiate an investigation into White's corruption (as he was the investigating officer on Petitioner's federal case); (2) raise the argument of prosecutorial misconduct (because of the prosecutor's failure to disclose information relating to White's criminal investigation); and (3) initiate an investigation into possible mitigating evidence concerning Petitioner's state convictions (which he asserts were based on White's corruption as the investigating officer and ultimately used to enhance his federal conviction). (Civil Docket, Doc. # 2 at 15).

The common thread underlying each of these allegations is Petitioner's claimed personal knowledge of White's corruption. However, as previously discussed, the record indicates that Petitioner did not share this personal knowledge with his attorney, the prosecutor, or the court. Nevertheless, Petitioner unreasonably claims that counsel should have initiated an investigation based on information that only he (the Petitioner) possessed. The test announced in *Strickland* does not include clairvoyance in the range of prevailing professional norms. Counsel did not act unreasonably in failing to independently investigate White's corruption because Petitioner failed to inform counsel of White's two prior attempts to bribe him. *Strickland*, 466 U.S. at 691 ("[W]hat investigation decisions are reasonable depends critically on [information supplied by the defendant]."). Petitioner cannot show that his trial counsel was deficient on these grounds. Thus, the court need not reach the question of prejudice, since the performance prong is not met.

    **ii.    Petitioner's Guilty Plea Was Valid**

In Ground Three, Petitioner alleges that his guilty plea was not knowingly and intelligently entered because the prosecutor committed a *Brady* violation by withholding information about White's criminal activity. (*Id.* at 18-27). Petitioner essentially argues that he would not have pled guilty had he known that the investigating officer on his state and federal

15

offenses had stolen money from the Decatur Police Department. Petitioner's claim is due to be dismissed for two reasons. First, the record demonstrates that Petitioner's guilty plea was entered knowingly and voluntarily after a thorough plea colloquy. Second, Petitioner has failed to show that the prosecutor withheld favorable information constituting a *Brady* violation.

It is well settled that a guilty plea must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970); *see also United States v. Ruiz*, 536 U.S. 622, 629 (2002); *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). A guilty plea is knowing and voluntary if (1) the plea is free from coercion; (2) the defendant understands the nature of the charges; and (3) the defendant knows and understands the consequences of his guilty plea. *United States v. Darville*, 423 F. App'x 939, 941 (11th Cir. 2011).

The record reveals that the court ensured Petitioner understood that he was stipulating to the correctness of the factual basis in the plea agreement, including the amount of drugs that was determined to be in his possession. (Criminal Docket, Doc. # 1167 at 16). Petitioner certified that he had discussed the plea agreement with his counsel, understood its operation and effect, and signed the agreement voluntarily because he was guilty. (*Id*. at 22). The court also explained the elements and maximum penalties associated with each charge as well as the consequences of waiving certain rights to trial and to appeal. (*Id*. at 16-21). Under these circumstances, the record demonstrates that Petitioner's plea was, in fact, knowing and voluntary.

As to whether Petitioner's plea was rendered unknowing and unintelligent due to the prosecutor's alleged *Brady* violation, it should be noted that the Eleventh Circuit has not addressed whether a guilty plea waives a *Brady* claim. *United States v. McCoy*, 636 F. App'x 996, 998 (11th Cir. 2016) (declining to decide the issue because the defendant did not raise a

viable *Brady* claim); *United States v. Matthews*, 168 F.3d 1234, 1242 (11th Cir. 1999) (same). However, the court need not address the issue here because Petitioner has failed to establish that the information relating to White's criminal activity would have created the foundation for a *Brady* violation. In asserting a *Brady* violation, a petitioner must show "(1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been revealed to the defense, there is a reasonable probability that the outcome of the proceedings would have been different." *U.S. v. Perez*, 473 F.3d 1147, 1150 (11th Cir. 2006).

Petitioner has not raised a viable *Brady* claim because there is no reasonable probability that evidence relating to White's indictment for Theft from a Government Agency Receiving Federal Funds would have affected the outcome of his proceedings. Any information the prosecutor might have possessed on White's criminal activities involved his theft of seized funds from the Decatur Police Department. (Case No. 5:09-cr-023-CLS, Doc. # 19). The factual basis of that crime has no bearing on Petitioner's involvement in a drug trafficking conspiracy. Also, as discussed above, Petitioner stipulated in his plea agreement and confirmed in his plea colloquy that he was "responsible for distributing, possessing with the intent to distribute, and/or conspiring to distribute or possess with the intent to distribute a quantity of controlled substance, cocaine, the weight of which is at least 15 to 50 kilograms, some of which was in the form of crack cocaine, and marijuana, the weight of which is at least between 100 and 400 kilograms." (Criminal Docket, Doc. # 333). Petitioner cannot establish that the prosecutor committed a *Brady* violation by withholding information completely unrelated to his own criminal proceedings.

17

Consequently, Petitioner's claim that his guilty plea was not knowingly and intelligently entered because of the prosecutor's supposed *Brady* violation is due to be dismissed.

### C.  Petitioner's Request for an Evidentiary Hearing is Due to be Denied

A petitioner under Section 2255 is entitled to an evidentiary hearing if he alleges "reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Aron v. United States*, 291 F.3d 708, 715 n. 6 (11th Cir. 2002). The court need not hold an evidentiary hearing if a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous." *Id.* Here, an evidentiary hearing is not required to resolve Petitioner's claims because the record demonstrates that they are both untimely and without merit.

### III. Conclusion

After careful consideration, and for the reasons explained above, Petitioner's Motion to Vacate (*Id.*, Doc. # 1) is due to be denied as untimely without an evidentiary hearing. A separate Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this February 14, 2019.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE